IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3555

LS3 INC., a Maryland corporation

       Plaintiff,

v.

CHEROKEE FEDERAL SOLUTIONS, L.L.C., an Oklahoma limited liability company; CHEROKEE NATION STRATEGIC PROGRAMS, L.L.C., an Oklahoma limited liability company; CHEROKEE SERVICES GROUP, LLC, a Cherokee Nation limited liability company; KELLY CARPER, an individual; DONALD LOPEZ, an individual; GWYNETH ROBE, an individual; DANIEL CERMAN, an individual; STEVE CLARK, an individual; DEBRA DIX, an individual; LEVI FLINT, an individual; GREGORY FRISINA, an individual; SIRISHA GANTI, an individual; WAYNE HOPKINS, an individual; ERICA HOPPE, an individual; ALAN HUGGENBERGER, an individual; JAKEB HUGGENBERGER, an individual; RONALD JACOBSON, an individual; KARL LONG, an individual; WILLIAM MCKINNEY, an individual; ISAAC MIRELES, an individual; KEVIN MUIR, an individual; FREDERICK PETERS, an individual; CAROL SCHREINER, an individual; REX STEFFEN, an individual; and NICHOLAS STEVENS, an individual.

       Defendants.

## COMPLAINT

Plaintiff LS3 Inc. ("LS3"), through its undersigned counsel, for its Complaint against the Defendants respectfully alleges as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1332 and Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. The amount in controversy in this action exceeds the sum or value of $75,000.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 2000e-5(f) because a substantial part of the wrongful conduct complained of herein occurred within the

jurisdictional boundaries of the United States District Court for the District of Colorado, and Defendants transact business in this district.

## THE PARTIES

4. Plaintiff LS3 is incorporated in the State of Maryland and has its principal place of business at 8266 Lokus Road, Suite 113, Odenton, Maryland 21113.

5. Defendant Cherokee Nation Strategic Programs, L.L.C. ("CNSP"), is an Oklahoma limited liability company with a principal place of business at 777 West Cherokee Street, Corporate Building 2, Catoosa, Oklahoma, 84015.

6. On information and belief, Defendant Cherokee Federal Solutions, L.L.C. ("Cherokee Federal") is an Oklahoma limited liability company and is the parent company of Defendant CNSP.

7. Defendant Cherokee Services Group, LLC is a Cherokee Nations limited liability company with a principal place of business at 777 W. Cherokee Street, Catoosa, Oklahoma 74015 and doing business in Colorado at 4803 Innovation Dr, Fort Collins, Colorado 80525.

8. Cherokee Federal's website bills itself as being a group of "dozens of companies" and explains that "we blend our heritage of ingenuity with modern business experience to deliver service and solutions that produce results for our customers." (Cherokee Federal, CNSP, and Cherokee Services Group are collectively referred to in this Complaint as the "Cherokee Defendants").

9. Defendant Kelly Carper is a citizen of Colorado, who resides, on information and belief, at 3749 Carrington Road, Fort Collins, Colorado, 80525.

10. Defendant Donald Lopez is a citizen of Colorado, who resides, on information and belief, at 1219 Davidson Drive #R04, Fort Collins, Colorado 80526.

11. Defendant Gwyneth Robe is a citizen of Colorado, who resides, on information and belief, at 315 E. Olive Street, Fort Collins, Colorado 80254.

12. Defendant Daniel Cerman is a citizen of Colorado, who resides, on information and belief, at 201 Windflower Way, Severance, Colorado 80550.

13. Defendant Steve Clark is a citizen of Colorado, who resides, on information and belief, at 1955 Sandalwood Lane, Fort Collins, Colorado 80526.

14. Defendant Debra Dix is a citizen of Colorado, who resides, on information and belief, at 3268 NCR 27, Loveland, Colorado 80538.

15. Defendant Levi Flint is a citizen of Colorado, who resides, on information and belief, at 2300 W. County Road 38E Lot 24, Fort Collins, Colorado 80526.

16. Defendant Gregory Frisina is a citizen of Colorado, who resides, on information and belief, at 6832 Colony Hills, Fort Collins, Colorado 80525.

17. Defendant Sirisha Ganti is a citizen of Texas, who resides, on information and belief, at 12856 Condit Ranch Road, Frisco, Texas 75035.

18. Defendant Wayne Hopkins is a citizen of Colorado, who resides, on information and belief, at 612 1st Street, Windsor, Colorado 80550.

19. Defendant Erica Hoppe is a citizen of Colorado, who resides, on information and belief, at 1212 Raintree Drive, Unit i174, Fort Collins, Colorado 80526.

20. Defendant Alan Huggenberger is a citizen of Colorado, who resides, on information and belief, at 312 Jewel Court, Fort Collins, Colorado 80525.

21. Defendant Jakeb Huggenberger is a citizen of Colorado, who resides, on information and belief, at 217 Ranae Drive, Loveland, Colorado 80537.

22. Defendant Ronald Jacobson is a citizen of Colorado, who resides, on information

and belief, at 312 S. Washington Avenue, Fort Collins, Colorado 80521.

23. Defendant Karl Long is a citizen of Colorado, who resides, on information and belief, at 411 East Swallow Road, Fort Collins, Colorado 80525.

24. Defendant William McKinney is a citizen of Colorado, who resides, on information and belief, at 6715 Wildflower Road, Fort Collins, Colorado 80526.

25. Defendant Isaac Mireles is a citizen of Colorado, who resides, on information and belief, at 7227 West 120th Street Lane, Greeley, Colorado 80634.

26. Defendant Kevin Muir is a citizen of Colorado, who resides, on information and belief, at 326 Talon Court, Fort Collins, Colorado 80524.

27. Defendant Frederick Peters is a citizen of Colorado, who resides, on information and belief, at 2937 Rocky Mountain Court, Fort Collins, Colorado 80526.

28. Defendant Carol Schreiner is a citizen of Colorado, who resides, on information and belief, at 4151 Alder Court, Loveland, Colorado 80538.

29. Defendant Rex Steffen is a citizen of Colorado, who resides, on information and belief, at 917 E. Lake Street, Fort Collins, Colorado 80524.

30. Defendant Nicholas Stevens is a citizen of Colorado, who resides, on information and belief, at 3325 Dixon Cove Drive, Fort Collins, Colorado 80526. (The individual former employees are collectively referred to as the "Individual Defendants").

## GENERAL ALLEGATIONS

31. Each Individual Defendant signed either an "Employment Agreement" or an "Intellectual Property, Non-Interference/Non-Solicitation and Non-Disclosure Agreement" ("IP-NDA").

32. Kevin Muir signed an employment agreement with LS3 on August 29, 2016.

33. Alan Huggenberger signed an Employment Agreement with LS3 on August 31, 2016.

34. Debra Dix signed an Employment Agreement with LS3 on August 30, 2016.

35. Daniel Cerman signed an Employment Agreement with LS3 on August 31, 2016.

36. Frederick Peters signed an Employment Agreement with LS3 on August 30, 2016

37. Gwyneth Robe signed an Employment Agreement with LS3 on August 31, 2016.

38. Nicholas Stevens signed an Employment Agreement with LS3 on August 29, 2016.

39. Ronald Jacobson signed an Employment Agreement with LS3 on August 31, 2016.

40. Rex Steffen signed an Employment Agreement with LS3 on August 29, 2016.

41. William McKinney signed an Employment Agreement with LS3 on August 29, 2016

42. Donald Lopez signed an IP-NDA with LS3 on November 14, 2018.

43. Erica Payge Hoppe signed an IP-NDA with LS3 on June 14, 2019.

44. Gregory M. Frisina signed an IP-NDA with LS3 on March 18, 2020.

45. Isaac Mireles signed an IP-NDA with LS3 on June 14, 2019.

46. Jakeb Huggenberger signed an IP-NDA with LS3 on or about April 20, 2020.

47. Kelly Jean Carper signed an IP-NDA with LS3 on July 23, 2019.

48. Karl Long II signed an IP-NDA with LS3 on October 2, 2018.

49. Levi Flint signed an IP-NDA with LS3 on April 30, 2019.

50. Steven Lawrence Clark signed an IP-NDA with LS3 on October 15, 2019.

51. Sirisha Ganti signed an IP-NDA with LS3 on August 1, 2019.

52. Wayne Lorden Hopkins signed an IP-NDA with LS3 on December 26, 2019.

53. LS3 provided services to the Federal Government via the "ICAM support contract."

54. On June 30, 2020, that contract was awarded to a company called Easy Dynamics.

Makpar, a business partner of LS3 for LS3's bid on the new contract, protested the award. Another company, called Golden IT LLC, also bid on the contract and protested the award to Easy Dynamics.

55. On information and belief, Easy Dynamics is a subcontractor of Cherokee Defendants.

56. Subsequent to these protests, the government made a directed award to Cherokee Defendants, an award worth approximately $6 million. This was done, strangely and atypically, instead of simply extending LS3's contract while the protest was resolved.

57. On or about August 13, 2020, Cherokee Defendants manager Laura Evans sent an email to all of Defendant's employees who were previously employed by LS3 and whom had been working in support of the ICAM contract. In the email, Ms. Evans stated that Cherokee Nation Strategic Programs was to be awarded a "bridge" contract and had "teamed with two other strategic partners to deliver this work during the bridge period." *See* Exhibit A.

58. CNSP, through Ms. Evans, solicited LS3's employees to leave their employment with LS3 and to instead "make this a simple and uneventful transition . . . into the CNSP contract."

59. In the email, CNSP was clear that it was aware of the existence of the contractual obligations of LS3 employees, stating: "I understand some of you have expressed concerns about non-compete agreements you have signed with your current employer."

60. CNSP then purported to reassure the employees by stating merely that "it is unlawful to use force, threats, or other means of intimidation to prevent any person from engaging in any lawful occupation" and providing a link to legal information pertaining to employment law.

61. CNSP attached an "Incumbent Questionnaire" to the email. In the questionnaire, employees were asked to provide various details which included their job title, the name of the

Technical Representative for the "work you perform," whether their position "require[d] ongoing training or certifications," the length of time worked "on this project," whether the employee has "clearance" and if so, "at what level," and whether the employee has equipment issued by LS3 that the employee "require[s] to perform" the employee's "work duties [with LS3]."

62. On information and belief, each Individual Defendant filled out the Incumbent Questionnaire and provided all or some of the details requested.

63. Then, on August 19, 2020, Ms. Evans followed up with any of LS3's employees who she had not heard from yet, or who she may have missed, urging them to "please send your information ASAP" if they were "interested in coming on board with the new contract" with CNSP.

64. On Monday, August 24, 2020, Ms. Evans again emailed LS3's employees, writing that "those of you who haven't heard from us yet will be hearing from us shortly" and "we will be reaching out to you with a link and ask you to formally apply for the position."

65. This was done to carefully orchestrate and give the appearance that each individual was simply responding to a publicly advertised position so as to obscure the reality, which was that Cherokee Defendants were willfully coordinating in advance to steal LS3's employees for Cherokee Defendants and their partners.

66. In the email, Ms. Evans made it sound like CNSP's attempts to poach LS3 employees were standard and expected—done as a matter of natural transition. This was far from the truth.

67. Tellingly, she imbued her communication with a sense of urgency, exhorting the employees: "When you receive this communication from us, *it is critically important that you act quickly!* Once we get the go-ahead from the government, we will be moving with lightning speed," and closing with "Thanks again for your patience, and your interest in joining this team."

7

68. As Cherokee Defendants were actively pursuing the government contract for the work that LS3 was, at that time, performing, it is clear that securing LS3's capabilities and manpower enabled and motivated the government to consider switching from LS3 to Cherokee Defendants as the USDA's service provider. Then, knowing that Cherokee Defendants had the workers secured, the government was able to make the switch from LS3 to Cherokee Defendants, and Cherokee Defendants thus became the USDA's ICAM service provider.

69. On information and belief, the government wanted assurances regarding which of the existing LS3 workers they would get and this information was being used as a precursor to making the award to Cherokee Defendants. In fact, had Cherokee Defendants been unable to secure LS3's workforce it is likely that the government would have taken a completely different contracting approach and instead simply extended LS3's contract by 6 months while the protest was resolved.

70. On Thursday, August 27, 2020, Arthur Molina, the "Senior Talent Acquisition Proposal Recruiter Lead for Cherokee Nation Businesses" again reached out to LS3 employees and asked them "to apply for the appropriate position now" because, purportedly, "We don't want you to have an employment gap between contracts."

71. Like Ms. Evans, Mr. Molina urged employees to act quickly, saying "we know this is a bit out of the usual order, but we have to proceed this way in order to ensure you can start on time." The operative words here are "start on time", which clearly demonstrates the carefully constructed and orchestrated coordination to ensure that the government suffered no performance lapses or program continuity problems as part of the switch from LS3 to Cherokee Defendants.

72. Cherokee Defendants' communications were designed to foster the sense in LS3 employees that they were primarily "USDA" workers, rather than LS3 employees. For example, Mr.

Molina told employees that "working with Team Cherokee" would "maintain[] your ability to continue with your important work at USDA."

73. Subsequently, Kelly Carper, Donald Lopez, and Gwyneth Robe were terminated by LS3 for disloyalty, breach of contract, and insubordination. The remaining Individual Defendants each resigned within hours of one another at the end of the same business day.

74. Each of the Individual Defendants now works for CNSP or their partners (e.g., Easy Dynamics).

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Against Individual Defendants)

75. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

76. The elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.

77. Each Individual Defendant entered into a valid, binding contract with LS3.

78. LS3 performed under the contracts at all times.

79. Nick Stevens, Donald Lopez, Debra Dix, and Gwyneth Robe breached the contract by soliciting fellow employees to leave the employ of LS3 and go to a competitor, the Cherokee Defendants.

80. All Individual Defendants breached the contract by disclosing confidential and proprietary information to the Cherokee Defendants.

81. All Individual Defendants breached the contract by competing with LS3 both during and following the Individual Defendants' employment by LS3. This competition occurred when the

Individual Defendants worked with LS3's direct competitor, CNSP and/or the Cherokee Defendants, both during and within the year following their employment.

82. LS3 sustained damages as a result of these breaches in an amount to be determined at trial, but no less than $25,000 per employee, or $525,000.

## SECOND CLAIM FOR RELIEF
### (Intentional Interference with Contract – Against Cherokee Defendants)

83. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

84. A person tortiously interferes with a contract when he knew of the existence of a contract, intentionally and improperly interfered with the performance of the contract, and the interference damaged the plaintiff.

85. The Cherokee Defendants knew that the Individual Defendants were each parties to a contract with LS3, and knew that the contracts prohibited solicitation of employees and customers both during the employment and for a period of one year thereafter.

86. The Cherokee Defendants intentionally and improperly interfered with the contract by providing the Individual Defendants misleading information, including misleading legal advice. The Cherokee Defendants purposely lured and tempted the Individual Defendants into breaching their contracts with LS3.

87. The Cherokee Defendants caused the Individual Defendants to breach their contracts with LS3, leading each of them to either be terminated or resign.

88. As a result of the Cherokee Defendants' wrongful conduct, LS3 suffered damages to its business reputation, its ability to serve its existing contracts and obtain new contracts, contract damages, and other damages to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Civil Conspiracy – Against All Defendants)**

89. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

90. Defendants agreed, by words or conduct, to commit theft of trade secrets, intentional interference with contract, breach of contract, breach of fiduciary duty, breach of the duty of loyalty, and other unlawful goals against Plaintiff.

91. Defendants performed one or more unlawful acts to accomplish these unlawful goals.

92. These unlawful acts included but were not limited to disclosure of confidential information, misappropriation of trade secrets, breach of contract, breach of fiduciary duty, breach of the duty of loyalty, and intentional interference with contract.

93. Plaintiff was injured, damaged, and/or suffered losses that were caused by the acts performed to accomplish the goal in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets – Against All Defendants)**

94. Plaintiff restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

95. Defendants each separately and acting in concert misappropriated the trade secrets of LS3.

96. LS3 took measures to prevent its trade secrets from becoming available to persons other than those selected by LS3 to have access to them, among other things by using password protection and requiring employees sign non-disclosure agreements.

97. Trade secrets that were misappropriated by Defendants included but were not

11

limited to plans, approaches, and proprietary methods for supporting the USDA on the ICAM contract.

98. The Individual Defendants' disclosure or use of the trade secrets was done by improper means because each breached his or her fiduciary and/or contractual duty to maintain secrecy.

99. The Cherokee Defendants acquired and used the trade secrets with knowledge that they were obtained by improper means and/or who knew they were acquired under circumstances giving rise to a duty to maintain their secrecy and/or that they were derived from persons (the Individual Defendants) who owed a duty to LS3 to maintain the secrecy or limit the use of the trade secrets.

100. Plaintiff suffered actual loss as a result of the misappropriation of its trade secrets, in an amount to be determined at trial.

101. The misappropriation was attended by circumstances of fraud, malice, and a willful and wanton disregard of Plaintiff's rights and feelings, and therefore Plaintiff requests the award of exemplary damages pursuant to C.R.S. § 7-74-104(2).

102. Such misappropriation was willful and malicious, and therefore under C.R.S. § 7-74-105, Plaintiff requests an award of its reasonable attorney fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, LS3 requests that the judgment be entered on its Complaint against all Defendants and in favor of LS3 on all claims for relief as follows:

    a. Awarding Plaintiff actual and compensatory damages in an amount to be determined

   at trial;

b. Awarding pre- and post-judgment and moratory interest, costs incurred and reasonable attorneys' fees as authorized by law; and

c. Granting such other and further relief as the Court may deem just and proper.

Dated this _____ day of December, 2020.

              Respectfully submitted,

              FORTIS LAW PARTNERS LLC

              */s/ Christine Lamb*
              Christine Lamb, Atty. Reg. #30326
              Lenora Plimpton, Atty. Reg. #48194
              1900 Wazee Street, Suite 300
              Denver, CO 80202
              Phone Number: (303) 904-6037
              Fax Number: (303) 295-9701
              clamb@fortislawpartners.com
              lplimpton@fortislawpartners.com
              *Attorneys for Plaintiff LS3 Inc.*