IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03555-PAB-NYW

LS3 INC., a Maryland corporation,

    Plaintiff,

v.

CHEROKEE FEDERAL SOLUTIONS, L.L.C., an Oklahoma limited liability company, et al.,

    Defendants.

## ORDER

This matter is before the Court on Certain Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 26] and Remaining Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 29]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

## I. BACKGROUND[1]

Plaintiff is a corporation that previously provided contracting services to the United States Department of Agriculture through an "ICAM support contract" ("ICAM contract"). *See* Docket No. 21 at 6, 8, ¶¶ 57, 72. Defendants are various Cherokee Nation companies (collectively, "Cherokee defendants") who also compete for government contracts, as well as plaintiff's former employees who now work for the Cherokee

---

[1] The Court assumes that the allegations in plaintiff's second amended complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

defendants (collectively, "individual defendants"). *Id.* at 2-3, 9, ¶¶ 5-12, 78. Plaintiff had placed a bid on a new ICAM contract, but that contract was awarded to another business, Easy Dynamics. *Id.* at 6, ¶ 58. One of plaintiff's partners and a separate company protested the award to Easy Dynamics. *Id.* After these businesses protested the award, the government awarded a contract (the "bridge contract") to Cherokee defendants during the pendency of the protest process. *Id.* at 6-7, ¶¶ 60-61.

Individual defendants signed either an "Employment Agreement" ("EA") or an "Intellectual Property, Non-Interference/Non-Solicitation and Non-Disclosure Agreement" ("IP-NDA") with plaintiff. *See id.* at 5-6, ¶¶ 35- 56. On August 13, 2020, a Cherokee manager, Laura Evans, sent an email to individual defendants who "had been working in support of the ICAM contract," informing them that Cherokee Nation Strategic Programs ("CNSP") was to be awarded the bridge contract. *Id.* at 7, ¶ 61. Ms. Evans solicited plaintiff's employees to leave plaintiff and join CNSP. *Id.*, ¶ 62. The email expressed Ms. Evans' understanding that individual defendants had "non-compete agreements" with plaintiff. *Id.*, ¶ 63. Attached to the email was an "Incumbent Questionnaire," which asked various questions regarding individual defendants' employment with plaintiff. *Id.*, ¶ 65. Each individual defendant completed the questionnaire. *Id.*, ¶ 66. At various times, agents for Cherokee defendants reached out to plaintiff's employees, asking them to apply for a job with Cherokee defendants on the bridge contract. *Id.* at 7-9, ¶¶ 67-68, 74. Individual defendants eventually left plaintiff, either voluntarily or after being fired, and now work for Cherokee defendants. *Id.* at 9, ¶¶ 77-78.

On December 2, 2020, plaintiff filed suit. *See* Docket No. 1. Plaintiff brings four claims in its amended complaint: (1) breach of contract against individual defendants; (2) tortious interference with contract against Cherokee defendants; (3) "civil conspiracy" in "violation of both federal law and state law" against all defendants; and (4) misappropriation of trade secrets against all defendants under both the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101 *et seq.* Docket No. 21 at 9-14.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with her allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation

omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

Defendants rely on several documents outside of the pleadings in moving to dismiss plaintiff's claims. *See* Docket Nos. 26-1, 26-2, 26-3, 26-4, 26-5, 26-6, 26-7, 26-8, 26-9, 29-1, 29-2, 29-3, 29-4, 29-5, 29-6, 29-7, 29-8. Generally, if a court considers matters outside the pleadings in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P 12(d). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a

4

motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, defendants have submitted the EAs, IP-NDAs, emails, and questionnaire referenced in plaintiff's complaint. These exhibits are central to plaintiff's allegations. *See* Docket No. 21 at 5-7, ¶¶ 35-57, 61, 65. Because plaintiff does not dispute their authenticity, the Court may consider the exhibits in resolving defendants' motions to dismiss.

## III. ANALYSIS

Because the Court exercises supplemental jurisdiction over plaintiff's state law claims, the Court applies the law of the forum state. *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). As a result, the Court applies Colorado law to plaintiff's claims.[2] *See id.*

### A. Breach of Contract

Defendants seek to dismiss plaintiff's breach of contract claim on several bases: (1) there is no valid contract because the non-compete agreements are void; (2) there was no breach of the IP-NDAs; (3) there is no valid contract because plaintiff has no "protectable interest to enforce the non-compete [a]greements after the bridge contract was awarded"; (4) defendant Debra Dix did not actively solicit any employee; and (5) plaintiff fails to sufficiently allege that individual defendants disclosed confidential information. *See* Docket No. 26 at 5-6; Docket No. 29 at 3.

Each of the EAs and IP-NDAs at issue contain a Maryland choice of law

---

[2] There is a dispute as to whether Colorado or Maryland law applies to the applicability of the non-compete agreements. *See* Docket No. 26 at 6. The Court addresses that issue in dealing with plaintiff's breach of contract claim.

provision. *See, e.g.*, Docket No. 29-1 at 6. As a result, plaintiff claims that the Court should interpret the agreements pursuant to Maryland law. Docket No. 32 at 9. Defendants argue that Colorado's choice of law rules indicate that the Court should interpret the agreements pursuant to Colorado law. *See* Docket No. 26 at 6-8. The Court agrees with defendants.

When exercising supplemental jurisdiction over state-law claims, a federal court "applies the substantive law, including choice of law rules, of the forum state." *BancOklahoma*, 194 F.3d at 1102 (citation omitted). Accordingly, the Court applies Colorado choice of law rules. In Colorado, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied," unless two conditions are met: (1) "application of the law of the chosen state would be contrary to a fundamental policy of a state" that (2) "has a materially greater interest than the chosen state in the determination of the particular issue." *See King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 585 (10th Cir. 2007). Thus, the Court must determine whether Colorado or Maryland has a materially greater interest in this dispute and, if Colorado, whether applying Maryland law would violate a fundamental policy of Colorado.

First, the Court finds that Colorado has a materially greater interest in the dispute. The only apparent interest in Maryland is that plaintiff is incorporated there. *See* Docket No. 21 at 2, ¶ 4. Plaintiff also argues that Maryland has the greater interest in the contract because the United States Department of Agriculture ("USDA") is "based in the Maryland area." *See* Docket No. 32 at 9. But the "Maryland area" is not Maryland and, plaintiff admits that the USDA is actually based in Washington, D.C. *Id.*

In regards to Colorado's interest, all but one individual defendant is a citizen of Colorado who resides in Colorado. *See id.* at 3-5, ¶¶ 13-34. Given that all but one employee lives in Colorado and works from Colorado, and the only connection to Maryland is plaintiff's state of incorporation, the Court finds that Colorado, not Maryland, has a materially greater interest in this dispute. *See King*, 485 F.3d at 586 (finding that it "strains credulity" to suggest that a state where the employee lives and works did not have a materially greater interest in the dispute when the only relationship with the competing state was that the defendant was "incorporated in New Jersey and maintains a human resources office there").

Second, the Court finds that enforcing the non-compete clauses in the agreements here would violate a fundamental policy of Colorado. Colorado "has a fundamental policy of voiding noncompete provisions that do not fall within one of the statutory exceptions." *Id.* If Colorado and Maryland's noncompete regimes "would reach opposing results," then Colorado's fundamental policy would be violated. *Id.* In Colorado, "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void" unless that provision is found in a contract (1) "for the purchase and sale of a business or the assets of a business; (2) "for the protection of trade secrets"; (3) "for recovery of the expense of educating and training an employee who has served an employer for a period of less than two years"; or (4) involving "[e]xecutive and management personnel and officers and employees who constitute professional staff to executive and management personnel." Colo. Rev. Stat. § 8-2-113(2); *see also King*, 485 F.3d at 586. Maryland, on the other hand, enforces non-compete agreements "if

the restraint is confined within limits which are no wider as to area and duration than are reasonable for the protection of the business of the employer and do not impose under hardship on the employee or disregard the interests of the public." *See Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 606 (D. Md. 2002) (citations omitted).

Thus, while Colorado bars non-compete agreements unless they fall within certain exceptions, Maryland has the opposite presumption, to enforce non-compete agreements unless they are unreasonable. The parties agree that the non-compete provisions here would be enforceable in Maryland. *See* Docket No. 26 at 8; Docket No. 32 at 10. On the contrary, Colorado would not enforce the non-compete agreements. None of the four exceptions apply: the non-compete agreements have nothing to do with executives, purchasing or selling assets of the company, training, or trade secrets. *See* Colo. Rev. Stat. § 8-2-113(2); *see* Docket No. 29-2 at 3-4 (prohibiting an employee from: (1) competing with plaintiff for a contract that plaintiff has or the employee knows plaintiff is seeking; (2) soliciting or contacting plaintiff's clients; and (3) interfering with plaintiff's business relationships); Docket No. 29-6 at 4 (prohibiting an employee from: (1) inducing someone to leave plaintiff; (2) working for a company that performs "substantially similar" work to plaintiff; (3) inducing a customer to stop working for plaintiff; or (4) inducing a customer to not engage in business with plaintiff). Thus, because Colorado has a materially greater interest in the contract and applying Maryland law would result in enforcing the non-compete when Colorado would not, Colorado law applies.[3] Accordingly, the non-compete provisions are void and

---

[3] Plaintiff argues that the trade secrets exception applies to at least the IP-NDAs because those documents state that disclosure of confidential information "could

unenforceable. *See* Colo. Rev. Stat. § 8-2-113(2) (stating that covenants not to compete "shall be void"). This includes any portion of the non-solicitation covenants that prohibit individual employees from soliciting plaintiff's employees after the individual defendants stopped working for plaintiff, as "Colorado law treats non-solicitation clauses as covenants not to compete." *Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1134 (D. Colo. 2018) (citations omitted).

To state a claim for breach of contract, plaintiff must allege (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) damages. *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). As a result, plaintiff cannot make out the first element of a breach of contract claim, the existence of a valid contract, at least as to plaintiff's claims based on violation of the non-compete and non-solicitation agreements. *See Carnation Bldg. Servs. v. City & Cnty. of Denver*, No. 11-cv-00703-CMA-MEH, 2011 WL 694047, at *14 (D. Colo. Dec. 29, 2011) ("Because no valid contract existed, Plaintiff's breach of contract claim . . . must be dismissed for failure to state [a] claim."). Accordingly, claims based on defendants' alleged violation of the non-competes will be dismissed.

Plaintiff argues that its breach of contract claim is "multifaceted" and does not

---

interfere with, competitively harm or otherwise disrupt business." *See* Docket No. 32 at 12. But this general trade secrets clause is not tied to the non-compete provisions, which do not mention trade secrets and only mention competition and customers. *See* Docket No. 29-2 at 3-4. A covenant not to compete "cannot be validated by the insertion of a companion clause dealing with trade secrets." *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783, 788 (10th Cir. 1984) (applying Colorado law).

rely on only the non-compete provisions. *See* Docket No. 32 at 7. Specifically, plaintiff argues that (1) the EAs and IP-NDAs prohibit the disclosure of confidential information and (2) the EAs and IP-NDAs contain what is essentially a duty of loyalty provision that prevents its employees, while employed by plaintiff, from interfering with plaintiff's business relationships. *Id.* at 4-7. Because (1) individual defendants disclosed confidential information and (2) these provisions do not interfere with individual defendants' post-employment ability to compete, plaintiff argues that it still has a valid breach of contract claim. The Court disagrees.

First, as to the alleged confidential information disclosed, plaintiff has failed to establish that any of the information in the questionnaire, which is the basis of the confidential information, was actually confidential, either under the terms of the agreements or under Colorado law. The agreements define confidential information as "information of LS3 relating to clients, products, know-how, negotiation strategy, business and training methods and systems, marketing, sales, business plans, budgets, prices, finances, or other business operations or activities." *See, e.g.*, Docket No. 29-1 at 4. Plaintiff alleges that the questionnaire asked the individual defendants for "their job title, the name of the Technical Representative for the 'work you perform,' whether their position 'require[d] ongoing training or certifications,' the length of time worked 'on this project,' whether the employee has 'clearance' and if so, 'at what level,' and whether the employee has equipment issued by LS3 that the employee 'require[s] to perform' the employee's 'work duties [with LS3].'" Docket No. 21 at 7, ¶ 65. This information does not fall under any of the categories defined by the agreements, but rather is general information about individual defendants. While the catch-all provision,

10

which states that "other business or operations or activities" of plaintiff, *see, e.g.*, Docket No. 29-1 at 4, could, in theory, include the information found in the questionnaire, Colorado law prevents plaintiff from using such a catch-all definition of confidential information.

"Under Colorado law, a confidentiality agreement is enforceable only to the extent that confidential information was acquired during the course of employment and [does] not [include] the general knowledge of a business operation." *Q-Tech Lab'ys Pty Ltd. v. Walker*, No. 01-cv-1458-REB-CBS, 2002 WL 1331897, at *10 (D. Colo. June 4, 2002) (citations, quotations, and alterations omitted). "Moreover, 'confidential information' does not include the general ability that an individual brings into employment, or the skill and experience acquired by the individual during employment." *Id.* The information requested falls within the category of "general knowledge" or skills and experience acquired. The information requested through the questionnaire – name, title, position, length of time worked, and clearance level – is information a job applicant would list on a resume or would be asked about in a job interview. That was the purpose of the questionnaire. Accordingly, plaintiff has failed to make out a claim that individual defendants breached their contracts by violating the confidentiality provisions.

Second, the Court finds that plaintiff has failed to state a claim as to the purported duty of loyalty provision. Plaintiff alleges that, on August 13, 2020, Ms. Evans emailed individual defendants regarding potential employment with Cherokee defendants. *See* Docket No. 21 at 7, ¶ 61. That email states that Cherokee defendants had already been awarded the bridge contract during the pendency of the

11

protest period. See Docket No. 26-9 at 2. But neither the EA breach of loyalty provision nor the IP-NDA breach of loyalty provision applies to such a situation. The IP-NDA prohibits an employee from "participat[ing] or otherwise be[ing] involved in competition with LS3 *for the award* of any contract . . . that Employee knows or should have known LS3 *was competing or preparing to compete*." See Docket No. 29-2 at 3 (emphasis added). If further prohibits participating in the "*award* of any contract" that "*would* replace, supersede, succeed, reduce, or diminish the work of LS3." *Id.* (emphasis added). The EA prohibits an employee from "directly or indirectly induc[ing] or attempt[ing] to induce any . . . client . . . to *cease* doing business with" plaintiff. Docket No. 29-3 at 4 (emphasis added). Thus, the plain language of these duty of loyalty provisions only prevent a current employee from generally interfering with a current or active business opportunity. But because plaintiff had already lost the contracts, individual defendants could not have violated the duty of loyalty provisions and, as a result, plaintiff has failed to state a claim for breach of contract based on these provisions.[4]

Accordingly, because the non-compete agreements are void, and plaintiff cannot

---

[4] To the extent that plaintiff argues that Debra Dix solicited employees during her employment, plaintiff's allegations are conclusory and need not be accepted. See *Moffet*, 291 F.3d at 1232. Plaintiff's only allegation is that, "[o]n information and belief, during the above-described time periods" Ms. Dix "solicited employees to leave LS3 both verbally and via email and other electronic communications." See Docket No. 21 at 10, ¶ 84. Plaintiff fails to describe the appropriate time period in the complaint, leading the Court to infer only that Ms. Dix did so during her employment. Moreover, while plaintiff has detailed allegations regarding Ms. Evans' solicitation, plaintiff offers nothing more than the bare allegation that Ms. Dix solicited employees. This is insufficient to state a claim. See *Cory*, 583 F.3d at 1244 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).

state a breach of contract claim based on the allegedly confidential information or the duty of loyalty provision, plaintiff's breach of contract claim against individual defendants will be dismissed.

### B. Tortious Interference with Contractual Relations

Cherokee defendants seek to dismiss plaintiff's claim against them for tortious interference with contractual relations on the basis that there was no valid contract with which Cherokee defendants could have interfered. *See* Docket No. 26 at 16. Plaintiff argues that the contracts are enforceable and it has properly alleged a breach of them. *See* Docket No. 32 at 15. The Court agrees with the Cherokee defendants.

Under Colorado law, a claim for tortious interference with a contract has five elements: (1) the existence of a contract between; (2) knowledge of that contract; (3) intentional, improper interference with the contract; (4) breach of the contract by the third party; and (5) damages. *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1117 (Colo. 1990) (citing Restatement (Second) of Torts § 766A (Am. Law. Inst. 1979)). Notably, not all intentional interference is actionable. The interference must be improper. *Id.* As applicable here, Colorado law states that interference will not be improper if "(a) the relation concerns a matter involved in the competition between the actor and the other[][;] (b) the actor does not employ wrongful means[][;] (c) his action does not create or continue an unlawful restraint of trade[;] and (d) his purpose is at least in part to advance his interest in competing with the other." *Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210-11 (Colo. 1984).

Plaintiff cannot state a claim for tortious interference because plaintiff has failed

to state a claim for breach of the contracts with which Cherokee defendants allegedly interfered. First, as already concluded, the non-compete and non-solicitation agreements are void and, as a result, plaintiff cannot state a claim for breach of contract based on those provisions. Accordingly, Cherokee defendants could not have interfered with those contracts. *See Westfield*, 786 P.2d at 1117 (citation omitted). Second, the Court has found that plaintiff has failed to state a claim for breach of contract based on the disclosure of confidential information or the duty of loyalty provisions. Cherokee defendants therefore could not have tortiously caused a breach of those contracts. *Id.* Accordingly, plaintiff fails to state a claim for tortious interference against Cherokee and that claim is dismissed.

### C. Misappropriation of Trade Secrets

Defendants seek to dismiss plaintiff's state and federal misappropriation of trade secrets claims on the basis that (1) plaintiff has failed to allege that defendants in fact disclosed trade secrets and (2) the information contained in the questionnaire is not properly considered a trade secret. *See* Docket No. 26 at 21-23. Plaintiff responds that the responses to the questionnaire were trade secrets and, as a result, plaintiff has sufficiently made out a claim for misappropriation. *See* Docket No. 32 at 16-18. The Court agrees with defendants.

Under Colorado law, a claim for misappropriation of trade secrets requires that a plaintiff demonstrate: "(i) that he or she possessed a valid trade secret, (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means." *See zvelo,*

*Inc. v. Akamai Techs., Inc.*, No. 19-cv-00097-PAB-SKC, 2019 WL 4751809, at *2 (D. Colo. Sept. 30, 2019) (citing *Gates Rubber Co v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993)). The Colorado Uniform Trade Secrets Act ("CUTSA") defines a "trade secret" as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." Colo. Rev. Stat. § 7-74-102(4). Under the federal Defend Trade Secrets Act, plaintiff must show: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *zvelo*, 2019 WL 4751809, at *2 (citation omitted). "Like CUTSA, DTSA defines 'trade secret' broadly to include 'all forms and types of financial, business, scientific, technical, economic, or engineering information' so long as 'the owner thereof has taken reasonable measures to keep such information secret' and 'the information derives independent economic value, actual or potential, from not being generally known to,' or ascertainable by, another person." *Id.* (quoting 18 U.S.C. § 1839(3)).

> In determining whether information is a trade secret, a court analyzes:
>
> (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, i.e., by the employees[,] (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5)

> the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.* (citing *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1257 (D. Colo. 2005)). Plaintiff argues that the information responsive to the questionnaire are trade secrets. But plaintiff fails to explain how any of that information meets to the statutory test. Rather, plaintiff argues that the information requested through the questionnaire – such as title, clearance, and so on – "encompassed trade secrets which LS3 alleged were secret and non-public." Docket No. 32 at 17. The complaint alleges that such information "rise[s] well above general or public knowledge," Docket No. 21 at 11, ¶ 87, and that plaintiff "took measures to prevent its trade secrets from becoming available . . . [by] using password protection and requiring employees [to] sign non-disclosure agreements." *Id.* at 13, ¶ 106.

The Court finds that the information requested by the questionnaire, which is the only information plaintiff alleges were trade secrets, are not a trade secrets. First, plaintiff fails to describe or argue how any of the information was kept from the public. Indeed, it is difficult to imagine plaintiff password protecting an employee's job title, certifications, length of time an employee worked on a project, and the employee's clearance level. *See* Docket No. 21 at 7, ¶ 65. There are no allegations other than "password" protecting the information that go to the extent the information is known outside the business. Second, there are no allegations that this information was kept secret within the business. *See zvelo*, 2019 WL 4751809, at *3 ("Moreover, plaintiff limits access to the database to fewer than five zvelo employees who are allowed to access the entirety of the database or to make changes to it."). Keeping an employee's

job title and description hidden from other employees is not plausible. The final three factors go toward the value plaintiff receives from the information; none of the information at issue is particularly valuable, hard to duplicate, or critical to plaintiff's business. It is implausible that the information requested by the questionnaire are trade secrets, and plaintiff offers no caselaw to support its argument.

Accordingly, plaintiff has failed to state a claim for misappropriation of trade secrets based on both state and federal law.

### D. Conspiracy

Defendants seek to dismiss the conspiracy claim on the basis that conspiracy is a derivative claim and, because plaintiff's other claims fail, the conspiracy claims fail with them. See Docket No. 26 at 24. Plaintiff's only response is that the other claims are viable and, as a result, the conspiracy claims remain viable. See Docket No. 32 at 18.

"To establish civil conspiracy under Colorado law, a plaintiff must show (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) an unlawful overt act, and (5) damages as to the proximate result." *Fed. Deposit Ins. Corp. v. Refco Grp. Ltd.*, 989 F. Supp. 1052, 1079 (D. Colo. 1997) (citing *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995)). The "essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from it." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989). "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak Const., LLC v.*

*Cornerstone Dev. Intern., LLC*, 97 P.3d 140, 146 (Colo. App. 2003). Accordingly, plaintiff's conspiracy claim fails.[5]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Certain Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 26] is **GRANTED**. It is further

**ORDERED** that Remaining Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 29] is **GRANTED**. It is further

**ORDERED** that all claims against all defendants are **DISMISSED** with prejudice. It is further

**ORDERED** that judgment shall enter for defendants and against plaintiff on all claims. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 29, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[5] Plaintiff also brings a "federal" conspiracy claim, but fails to cite any particular statute. *See* Docket No. 21 at 12-13. Presumably, plaintiff intends to allege a violation of 18 U.S.C. § 1831(a)(5), which prohibits someone from conspiring to steal trade secrets. However, since the information allegedly conspired to steal is not a trade secret, plaintiff cannot succeed on that claim either.